UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LOUIS DECKER,                                    **REPORT AND**
                                                 **RECOMMENDATION**
                    Plaintiff,
                                                 12-CV-1107
                                                 (NAM/VEB)
            v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.
_____

## I. INTRODUCTION

In January of 2009, Plaintiff Louis Decker applied for disability insurance benefits

and SSI benefits under the Social Security Act.  Plaintiff alleges that he has been unable

to work since October 2008 due to physical and psychological impairments. The

Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorneys, Legal Aid Society of Northeastern New York,

Mary Martha Withington, Esq., of counsel, commenced this action seeking judicial review

of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On October 2, 2013, the Honorable Gary L. Sharpe, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 12).

## II. BACKGROUND

The procedural history may be summarized as follows:

On January 30, 2009, Plaintiff applied for disability insurance benefits and SSI benefits under the Social Security Act, alleging that he had been unable to work since October 15, 2008. (T at 154-57, 158-61).[1]  The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Albany, New York, on June 15, 2010, before ALJ Carl E. Stephan.  (T at 75). Plaintiff appeared *pro se.*  He requested and received an adjournment. (T at 79).  A second hearing was held on August 31, 2010.  Plaintiff appeared at the second hearing with an attorney and testified. (T at 84-97).

On November 22, 2010, ALJ Stephan issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claims for benefits.  (T at 9-26).  The ALJ's decision became the Commissioner's final decision on May 4, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-5).

Plaintiff, by and through counsel, timely commenced this action by filing a Complaint on July 12, 2012. (Docket No. 1).  The Commissioner interposed an Answer on December 3, 2012.  (Docket No. 7).  Plaintiff filed a supporting Brief on January 16, 2013. (Docket No. 10).  The Commissioner filed a Brief in opposition on March 4, 2013. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons below, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and this case be dismissed.

## II. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age,

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2008 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2012 (the "date last insured"). (T at 63). The ALJ found that Plaintiff had the following "severe" impairments, as defined under the Social Security Regulations: chronic obstructive pulmonary disease ("COPD"), affective disorder, anxiety disorder, and personality disorder. (T at 63-64). The ALJ determined that Plaintiff's medically determinable impairments did not meet or equal any of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 64-66).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR §404.1567 (b) and § 416.967 (b), except that he was limited to simple work that does not involve constant interaction with others and should avoid environments with concentrated dust, odors, and other pulmonary/respiratory irritants. (T at 66-69).

The ALJ determined that Plaintiff could not perform his past relevant work as a warehouse laborer. (T at 69-70).  However, considering Plaintiff's age (44 on the alleged onset date), education (limited), and RFC (light work with some restrictions), the ALJ

concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 70-71).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as that term is defined under the Act, from the alleged onset date (October 15, 2008) through the date of the ALJ's decision (November 22, 2010, and was therefore not entitled to benefits. (T at 71). As noted above, the ALJ's decision became the Commissioner's final decision on May 4, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-5).

**2.      Plaintiff's Claims**

Plaintiff argues that the Commissioner's decision should be reversed. He offers four (4) principal arguments. First, Plaintiff contends that the ALJ should have found certain of his conditions to be severe impairments. Second, Plaintiff argues that the ALJ's RFC determination was flawed. Third, Plaintiff challenges the ALJ's credibility assessment. Fourth, Plaintiff contends that the ALJ's step 5 analysis was flawed. This Court will address each claim in turn.

**a.      Severity of Impairments**

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding

6

appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

As noted above, the ALJ found that Plaintiff had the following "severe" impairments: chronic obstructive pulmonary disease ("COPD"), affective disorder, anxiety disorder, and personality disorder. (T at 63-64). Plaintiff contends that the ALJ should have also found that his insomnia, obesity, personality disorder, and post-traumatic stress disorder ("PTSD") were severe impairments.

The ALJ found that Plaintiff's personality disorder was a severe impairment (T at 63-64), so this aspect of Plaintiff's argument must fail. The ALJ noted that Plaintiff's treating psychiatrist (Dr. Ginger Simor) diagnosed PTSD, (T at 63) but did not make a specific finding as to whether the condition was severe. Although some severity finding should

have been made, the ALJ was clearly aware of Plaintiff's mental impairments (including PTSD), found that he had other severe impairments, and considered those impairments when assessing Plaintiff's RFC (i.e. by finding that Plaintiff was limited to simple work that did not require constant interaction with others). As such, any arguable error in not making a specific finding with regard to the severity of Plaintiff's PTSD was harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

With respect to insomnia, Plaintiff testified that prescription sleep medication (Ambien) was "sometimes" helpful. (T at 95). There is no objective evidence in the record that Plaintiff's sleep difficulties caused any limitation with respect to his ability to perform basic work activities. As such, this Court finds no error in the ALJ's failure to find this to be

a severe impairment,

With respect to obesity, the record established that Plaintiff is obese.  He is 5'6" tall and, at the time of the administrative hearing, weighed 210 pounds. (T at 91).  He experienced significant weight gain when he quit smoking. (T at 93).  The Social Security Administration has said that the ALJ is obligated to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." S.S.R. 02-1 p, 2000 WL 628049, at *7. However, despite this language, some district courts have declined to remand when an ALJ fails to explicitly address obesity, reasoning that obesity is indirectly considered if the ALJ adopts limitations suggested by examining doctors. See, e.g., Guadalupe v. Barnhart, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24,2005) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir.2004)) (reasoning that the ALJ "relied on" medical evidence that made no mention that Plaintiff was obese even though it must have been apparent at the time of the assessment and thus the ALJ "sufficiently, if somewhat indirectly, accounted for Plaintiff's obesity"); Martin v. Astrue, No. 5:05-CV-72, 2008 WL 4186339, *3-4, 11-12 (N.D.N.Y. Sept. 9, 2008) (finding ALJ's failure to explicitly address Plaintiff's obesity harmless error, because the ALJ "utilized" the physical limitations from various doctors who considered Plaintiff's obesity).

Here, Plaintiff did not identify obesity as a disabling limitation (T at 199) and the ALJ did not specifically discuss Plaintiff's obesity.  However, the consultative examiner and treating providers referenced Plaintiff's weight in their notes and assessments. (T at 281, 300, 303, 306, 361).  The ALJ relied on these notes and assessments when formulating his RFC finding. (T at 63-68). Plaintiff has not pointed to any evidence indicating that his obesity, either alone or in combination with other impairments, imposes limitations beyond

those identified in the ALJ's RFC determination.

For the reasons outlined above, this Court finds no reversible error at step two of the sequential evaluation. The ALJ found that Plaintiff had severe impairments and considered the effect of Plaintiff's impairments, singly and in combination, when formulating his RFC findings.

### b.    RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the RFC to perform light work, as defined in 20 CFR §404.1567 (b) and § 416.967 (b), except that he was limited to simple work that does not involve constant interaction with others and should avoid environments with concentrated dust, odors, and other pulmonary/respiratory irritants. (T at 66-69). The ALJ's determination was supported by substantial evidence.

Plaintiff reported that he stopped working on October 15, 2008 (the alleged onset date) because his employment was a "temp job." (T at 199, 87). Plaintiff testified that he is capable of lifting 20 pounds occasionally. (T at 90). He can stand for an hour at a time before experiencing back and leg pain. (T at 90). He has no problems sitting. (T at 91).

In May of 2009, Dr. Kautilya Puri, a consultative examiner, reported that Plaintiff performed occasional cooking, cleaning, laundry, shopping, and child care. (T at 281). Plaintiff had full range of motion bilaterally in his upper and lower extremities. (T at 282). No motor or sensory deficits were noted and no muscle atrophy was evident. (T at 283). Dr. Puri assessed no objective limitations as to communication, fine motor skills, or gross motor activity, (T at 283). He found no objective limitations as to gait or activities of daily living, but did recommend that Plaintiff not be in an environment that would increase his respiratory complaints. (T at 283).

In July of 2009, Dr. Marc Price performed a breathing test (spirometry) and reported that it was "probable" for normal results and that Plaintiff had "likely" demonstrated "poor effort." (T at 327). In August of 2009, Dr. Stephanie Messercola, a treating family physician, reported that Plaintiff denied psychiatric symptoms and had normal mood, affect, and orientation. (T at 299-300). She performed pulmonary function testing and heard wheezing, but opined that Plaintiff's results (which were "minimally abnormal") could have been affected by "poor effort." (T at 300, 303). Plaintiff was hospitalized due to psychiatric symptoms in February of 2010. His COPD was described as "not currently active." (T at 333).

In February of 2010, Plaintiff was admitted to Ellis Hospital for depression and

suicidal thoughts. (T at 331).  Plaintiff reported being frustrated because his doctors were "not backing him up" with respect to his application for disability benefits. (T at 334). Plaintiff's COPD was described as "not currently active." (T at 333).  Upon admission, Plaintiff was assigned a Global Assessment Functioning ("GAF")[4] score of 30 (T at 345), which indicates a "major impairment" in social or occupational functioning. See Hendrickson v. Astrue, 11–CV–927, 2012 WL 7784156, at *8 n. 12 (N.D.N.Y. Dec.11, 2012).

On discharge, however, Plaintiff's GAF score was 65 (T at 347), which indicates "[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships." Kohler v. Astrue, 546 F.3d 260, 262 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000)).

In March of 2010, Dr. Ginger Simor, a treating psychiatrist, assigned a GAF score of 50. (T at 363). "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard v. Halter, 377 F.3d 183, 186 n.1 (2d Cir. 2004).  In August of 2010, Dr. Simor reported that Plaintiff was feeling frustrated that his primary care provider would not support his application for disability benefits. (T at 359).  Plaintiff was described as cooperative and experiencing some improvement with medication. (T at 359).

In September of 2010, Dr. Todd Kuntz, a psychiatric consultative examiner, diagnosed major depressive disorder (mild to moderate), anxiety disorder, personality

---

[4]The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. " Pollard v. Halter, 377 F.3d 183, 186 (2d Cir. 2004).

disorder, and emphysema (per Plaintiff's self-report). (T at 369). Dr. Kuntz opined that Plaintiff was capable of understanding and following simple and complex instructions and could perform complex tasks independently. (T at 369). Plaintiff's ability to sustain attention and concentration was appropriate and he could relate and interact moderately well with others. (T at 369). He was capable of managing his own funds. (T at 369). Dr. Kuntz assessed moderate limitations as to interacting appropriately with the public, supervisors, and co-workers, as well moderate limitation with respect to the ability to respond appropriately to usual work situations and to changes in a routine work setting. (T at 372).

The ALJ reported that he tried unsuccessfully to obtain a treating source assessment of Plaintiff's work-related functioning. (T at 69). The ALJ presumed that Plaintiff's counsel had undertaken similar efforts and was likewise unsuccessful. (T at 69).[5]

As outlined above, the ALJ's RFC determination was supported by Plaintiff's activities of daily living, objective spirometry testing, the assessments of the consultative examiners, and the overall record. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

In addition, evidence submitted by Plaintiff to the Appeals Council provides further support for the RFC determination. In February of 2012, Dr. Antonio Gregorian, a treating

---

[5]Plaintiff's counsel does not dispute this point.

physician, opined that Plaintiff was moderately limited with respect to walking, lifting/carrying, and stairs/climbing; but had no limitation as to standing or sitting. (T at 8). He also assessed moderate limitations as to understanding and remembering instructions, carrying out instructions, and functioning in a work setting at a consistent pace. (T at 8). Dr. Gregorian found no evidence of limitation with respect to Plaintiff's ability to maintain attention/concentration, make simple decisions, interact appropriately with others, maintain socially appropriate behavior, and maintain basic standards of personal hygiene and grooming. (T at 8). Dr. Naveen Achan, a treating psychiatrist, declined to assess Plaintiff's mental functioning and reported that he should not engage in heavy lifting due to COPD. (T at 13). These reports provide additional support for the ALJ's RFC determination.

### c.    Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. See See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other

indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must

state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: He completed the seventh grade, but can read and write. (T at 86). He cannot perform heavy lifting (i.e. more than 20 pounds) due to his breathing difficulties. (T at 89-90). Plaintiff smokes a pack of cigarettes a day. (T at 89). He can walk for an 1/8 of a mile or stand for an hour before he has foot pain. (T at 90). Sitting is not a problem. (T at 91). His ability to concentrate is "average" and described himself as having difficulty with oral instructions. (T at 94). His pace is slow, but he is able to complete tasks that he starts. (T at 94). He can scrub a floor for an "hour or two" before back pain forces him to stop. (T at 95). He has some computer skills. (T at 95).

The ALJ determined that Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the medical evidence. (T at 67).

The ALJ's credibility assessment is supported by substantial evidence. As outlined above, there was little objective evidence of serious limitations resulting from Plaintiff's breathing problems. Although he had some mental limitations, the ALJ reasonably concluded that Plaintiff could perform the mental demands of basic work activity, provided the work was simple and did not require constant interaction with others. This assessment was supported by the findings of the consultative examiners, Plaintiff's activities of daily living, and the medical evidence as a whole.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." <u>Carroll v. Secretary of Health and Human Servs.</u>, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." <u>Aponte v. Sec'y, Dep't of Health & Human Servs</u>, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. <u>See</u> <u>Tejada v. Apfel</u>, 167 F.3d 770, 776 (2d Cir.1999) (citing <u>Pascariello v. Heckler</u>, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); <u>see</u> <u>also</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 135 (2d Cir.1999).

There is no question that Plaintiff lives with pain, as the record documents frequent complaints in that regard. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. <u>See</u> <u>e.g.</u> <u>Mimms v. Sec'y of Health and Human Servs.</u>, 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

### d.    Step Five Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. §

404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. (T at 70). In particular, he found Plaintiff not disabled under the framework of Medical-Vocational Rule 202.18. (T at 70). As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

The ALJ noted that Plaintiff retained the ability to understand, carry out, and remember simple instructions and to interact with others on a frequent (but not constant basis). As such, Plaintiff's work capacity was not significantly diminished by his non-exertional impairments. (T at 70-71). The ALJ's RFC determination was supported by substantial evidence and the ALJ's conclusion that Plaintiff's non-exertional limitations did

not significantly diminish his work capacity should be sustained. <u>See</u> SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiners, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 19, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were*

*not*, presented to the Magistrate Judge in the first instance. <u>See</u> <u>Patterson-Leitch Co. Inc.</u>

<u>v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.


Victor E. Bianchini
United States Magistrate Judge

Dated:   November 19, 2013

      Syracuse, New York